Okay, Mr. Broussard. Your Honor, I represent Mr. Richard Logan, who had applied for an I.T. specialist job at the prison in Pollock, Louisiana, and was denied that promotion. We tried the case, and Judge Drell ruled against us, and he gave complete credibility to the warden for all the testimony. One of the things that came up was, what was the correct burden of proof? Well, in his summer — when he overruled the summer judgment, he put down that not only the mixed-motive standard of proof was applicable, but he said the government in a footnote said the government agreed with that. Yet, when he wrote — made this opinion, the trial opinion, which he didn't give anybody a chance to brief it, he didn't indicate he was changing anything. He went to the but-for and the mixed-motive both. There's only been one other case that I've found in the Fifth Circuit that has addressed the burden of proof, and that was the case of Vest v. Johnson. It's at 217 U.S. District, Lexus 8188, from the Northern District of Mississippi. Judge Neil Biggers was the judge. This was in January 2017, and he, like even the Merit System Protection Board, has said that there's no difference between the standard of proof. Yet, the case that Judge Stewart relied on, the Ford case, indicated that obviously the statute was different. The 623A, which deals with private sector age discrimination, says prohibits personnel decisions made because of a person's age, because of a person's age. 633A provides that personnel actions shall be, quote, free from any discrimination based on age. The — Mr. Broussard, your concern is with regard to which standard we ought to be applying, whether it's a mixed-motive or a motivating factor versus a but-for test. Is that what we're talking about? I'm just trying to understand. Yeah, that's — that's — in my — in this case, Judge Drell went and applied both. But the question is, the Fifth Circuit has not definitively said, what is the burden of proof under 633A age discrimination, a Federal age discrimination? Is it the mixed-motive, or is it the but-for? But on appeal, if — if we were to decide that under either standard your client doesn't prevail, then that would be the end of the matter. We wouldn't need to decide which standard is correct in this case, would we? That's right, Judge. I agree — I agree with that, if — if you decide that my client wouldn't prevail. We're saying, one, that the correct standard of proof, I mean, if you find but-for, obviously, you're not going to find mixed-motive. I mean, but-for is — is — is the determinative factor. But we're saying the judge abused his discretion in assessing the former warden's testimony, and then there was a legal error that the warden testified. Two things. He said that he wasn't going to select anybody from — there was four applicants, and three of them were from his facility. And he said, I want — he didn't select our — my client because he would have added overtime hours to his facility. So he picked somebody from Oakdale because it — it wouldn't — it — he'd save himself some overtime. My client didn't know anything about it. Nobody ever knew anything about it. They were — if that was the case, they were precluded before they even applied if — if it was going to affect the overtime. The second thing, though, is a key thing. He said that he would have selected my client, who had been in the job for 18 months, was selected for training for that job and performed in that job and received an award, which was introduced in the evidence, a $500 cash award for outstanding work. He said, I would have selected him but for — my buddy over here in Oakdale's — recommended this 10-month employee, correctional guard, who was on probation, who had a degree in mathematics and physics, though some of the evidence indicated that the warden keeper thought he had a master's degree. He said, I would have selected your client but for — Warden Young recommended him. And I contend that that's a violation of the prohibited personnel practices of the federal government, which I've cited in my — in my brief, that you have to look at the qualifications and objective evidence. And here, this goes back to the old good old buddy deal. You know, Joe Jones wanted — I've got this young guy here, 27-year-old, and I want you to hire him. I said, okay, so we'll hire him. What about these other applicants that are qualified? Well, don't forget about them. He didn't have Joe Jones's recommendation. And — Your claim is that your client — Beg your pardon? Your client wasn't hired for the position because of his age. Is that your claim? Logan. Right. What about — I didn't understand. I said, it's your claim that he didn't get it because of his age. That's right. Yeah. And the warden made comments that the judge rejected, trial judge rejected, that he went around — the warden went around to — and told my client and told his supervisor that there's a young, 27-year-old guy from Oakdale that Warden Young's recommended, and we're going to select him. Well, you don't disagree that a 27-year-old guy is young, do you? No, I have no — If you refer to a 27-year-old guy as a young guy, that doesn't mean that's the reason you hire him. My client being 45 years old, he says that's young. That's 18 years too young. All I'm saying is, referring to somebody as a young guy isn't evidence that that's the reason he was hired, is it? Well, if you use a mixed motive, it indicates that that's an agent statement that indicates some discriminatory motive on the warden's part. That's the point I'm trying to make. The — when he goes around and tells everybody, I got a young, 27-year-old probationary correctional guard over in Oakdale, no IT experience within the Bureau of Prison that I'm entertaining. Now, he did have experience with the Navy. We know that. Worked at the Pentagon, didn't he? At the Pentagon. That's right. Worked at the Pentagon. And so we're saying that — but what's key is that the warden that did the selection says, I would have selected your client but for the recommendation of warden, my good friend, Joe Young over in Oakdale, who says he wants me to take this guy. Plus, I'm going to save myself some overtime. And I submit to you that, you know, we — us and lawyers, we like to get cases that fit like a glove. But sometimes we have cases that we have a round peg trying to put in a square hole, a square peg trying to put in a round hole, and it's a challenge to us. But this case just doesn't pass the spell test, does it? But the district judge here made credibility determinations, and I think he believed the warden — what's the name? Keffer? — over your client and Crawford. So how are we supposed to review that where there was a credibility determination and the judge believed some witnesses over others? I agree. I agree. But if you look at his credibility determinations, they're not rational, Judge. For instance, he's — the warden said he did not know the ages of the applicants, yet he was given a file and it had the name of the applicant and it had the date of birth under it. The warden said, I never read that. Well, I mean, I can't — you know, it's there. The race wasn't there, the national origin wasn't there, the religion wasn't there, just the date of birth right under the names of it. Warden said, I never read it. The warden said he denied he made the statements to Crawford and to my client. Now, you have to remember, Mr. Crawford was my client's first-line supervisor who had retired. And whenever — but initially, when my client was selected for that job, Crawford was against it because he was scared that he'd be accessed information that would involve him with the union. Afterwards, Crawford gives him an above-average indication, and Crawford came in and testified. The judge had absolutely no reason to reject Crawford's testimony, other than the fact he's going to say, this is the warden, and the warden says this, and I'm going to believe the warden about everything that the warden said. And that's what he did. I recognize — you know, I got a tough road to hoe when you got the offense trial and you got — the question is whether it's clearly erroneous. But then if you look at the warden's admission, that the only reason I didn't hire your man, Mr. Broussard, was because Joe Young over there told me to hire him. Plus, I'd saved myself some overtime. Both factors, which my client had no control over, nothing, and didn't know nothing about until it was done. But the — Your Honor, we submit that the remarks that were made by the warden were not stray remarks. They were remarks that were made by somebody that showed a discriminatory animus that was on the part. He's responsible for the decision. He — it was proximate in time of whenever the decision was being made, and it was related to the decision. The interesting thing is my client was selected for training in that position and did it for 12 months, and then at the end of 12 months, they extended it six more months. They sent him back to be a guard, and that's what he's doing today. He's a guard. Well, the government's now wasted 12 and 6 — 18 months. They sent him to Dallas to learn the Novell computer language stuff. They did all that, and yet they went ahead and picked up a 27-year-old guy who had been working for the department for 10 months as a probation. Is there evidence in the record showing that your client was better qualified than Crawford? We contend there was. We say that he is better qualified by looking at the paperwork of the qualifications. He had an associate degree in computer technology where all the courses were focused on the exact type of job that he was in, plus the fact he had 12, 18 months in the job, doing the job that we're talking about. Yes. Any other questions? All right. You've saved time for rebuttal, Mr. Broussard. Thank you. Hi. I'm Jennifer Frederick. I'm here today on behalf of the appellee, Jefferson Sessions. I want to start with the two points that Mr. Broussard made about the reasons he suspects that — or his client suspects that Warden Kaffer picked Mr. Logan for this position. Both that he stated, one was the recommendation of Joe Young, who was the warden at Oakdale at the time and was the boss of the selectee, Dustin Crawford. The other was because Warden Kaffer was going to save 2,080 hours of overtime. Those are the two reasons he puts out for you. And he cites the Merit Service Protection Board. Let's start with that wasn't even a part of this lawsuit. It wasn't considered by the district court. It's in none of the pleadings. And the issue actually wasn't raised until appeal. And I'm not even sure it's properly raised on appeal. Well, I know it's not properly raised for the first time on appeal, but I'm not even sure it's something they could sue on in this lawsuit. So we actually addressed that in our brief, and I think that that's adequately addressed there. But those are the reasons he's putting forth to you today, now that he thinks his client wasn't chosen. Yet this is an age discrimination lawsuit. That's what we tried before Judge Drell in a one-day bench trial. That's what he ruled on in a well-reasoned opinion. And that's the opinion that this Court should affirm today. I thought we were going to hear to talk about the burden of proof between 623 and 633. But I don't think it matters in this case. There was no credible evidence of age discrimination advanced by Mr. Richard Logan at this trial. The judge listened to the testimony. This was a short trial. We had only Warden Keffer, Mr. Logan, and Mr. Cliff Crawford, who was the head of the IT department. That's it. Well, there was certainly reference in the record to the fact that Crawford was young. That is evidence. You may contend that it's not enough evidence. But it's too much for you to claim that there was no evidence. Well, it's not that there was no evidence. Let me restate. There was no credible evidence. Mr. Cliff Crawford and Mr. Logan both testified that in some passing way, Warden Keffer said, this is a young guy. He's 27. Those are the two times. That's what they claim he said. When Warden Keffer got on the stand, he categorically denied ever making that characterization of Dustin Crawford, who was the selectee. The other thing that's interesting in this, the only other evidence of age discrimination that the plaintiff put forth was the applications. He said that the date of birth, and I think he just talked about that, was on the front page of these applications. And again, when Warden Keffer was on the stand, he was questioned extensively about this. Judge Drell was sitting there. He evaluated the credibility. He said, I don't look at that. I pick a bunch of people. I look at the person's name, flip to the next page. I don't know how old these people are. He doesn't interview them. The only thing he gets is a list of people on the best qualified list, and he gets a pack of applications. And he just picks somebody from that particular list. You asked about whether or not he was clearly better qualified. And I guess we're talking about Mr. Logan, whether he's clearly better qualified. Again, Judge Drell was there. He tried the case. He evaluated the evidence. And he made the credibility call that the evidence did not prove that either candidate was substantially or clearly better qualified than Mr. Crawford. So in that case, too, I think those are all the parts of evidence that the plaintiff put on at this trial to say there was age discrimination. Each case, Judge Drell was the trier of fact, and he found that that was not credible evidence. So regardless of the burden of proof, whether it's but-for, whether it's a mixed motive, there's no credible evidence of age discrimination. So I don't know if this is the case that this Court could definitively determine whether or not the burden of proof, which burden of proof applies to Federal versus non-Federal employees. If there's no further questions. All right. Thank you, Ms. Frederick. Mr. Broussard, you've saved time for rebuttal. Warden Keefer justified that he solely relied on his recommendation of his old buddy, Warden Young from Oakdale, that that was the most important thing to him. It was a tipping point of the selection. If anyone other than Warden Young had given him the same recommendation, he would have complained of it. This fact was one that the plaintiff could not address and was not aware of. What I'm saying, he had a recommendation from Warden Young. I've got a young, 27-year-old employee. I want you to hire. And he hired him. And now he's saying, well, you know, if he, Joe Young hadn't given that to me. The Federal personnel practices don't allow that. They allow . . . If you read this Dodd versus Best case, which is the Judge Biggers case from Mississippi, that is a very thorough decision about TVA, about hiring somebody in age discrimination. And they went way into detail about it. But here, we're talking about hiring a young fellow that was recommended by an old buddy, and we're going back to the good old boy network. That's what I was objecting to. Thank you, Judge. All right. Thank you, Mr. Broussard. Your case and all of today's cases are under submission, and the Court is in recess until 9 o'clock tomorrow.